**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-3657

ELIZABETH BOBIAN,

 Plaintiff,

v.

DISH NETWORK, L.L.C.

 Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Elizabeth Bobian ("Plaintiff"), by and through counsel, brings this action against Defendant Dish Network, L.L.C. ("Defendant" or "DISH") and hereby states and alleges as follows:

**INTRODUCTION**

1. This Complaint and Jury Demand arises from the wrongful termination of Plaintiff's employment by DISH, as well as the hostile work environment it created prior to the termination, because of Plaintiff's disabilities, sex/gender, and age. Plaintiff's Complaint alleges claims for relief for discrimination in violation of applicable Federal law.

**JURISDICTION AND VENUE**

2. This Court has original federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 et seq.; Title I of the Americans with Disabilities Act

COMPLAINT AND JURY DEMAND - 1

of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et seq.; and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.

3.     Personal jurisdiction over DISH is proper because (1) it does business in the state of Colorado, including operating its principal place of business in Arapahoe County, Colorado; (2) a substantial part of the events giving rise to the action occurred in this District; and (3) the employment records relevant to the challenged employment practices are maintained and administered in this District.

4.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the employment practices alleged to be unlawful were committed in the Denver metropolitan area.

## ADMINISTRATIVE PREREQUISITES

5.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission and received her Notice of Right to Sue on September 15, 2020. Plaintiff has met and exhausted all administrative prerequisites. This case is timely filed.

## PARTIES

6.     Plaintiff is a legal resident of the United States and was, at all relevant times, a citizen of the State of Colorado domiciled in Denver, Colorado.

7.     Plaintiff was, until April 2, 2019, an employee of DISH.

8.     DISH is a Colorado limited liability company with its principal place of business at 9601 South Meridian Boulevard, Englewood, CO 80112.

9.     Upon information and belief, at all relevant times, DISH has continuously been an employer within the meaning of the ADEA, the ADA, and Title VII.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a female born on October 6, 1971.

COMPLAINT AND JURY DEMAND - 2

11.     Plaintiff began working for DISH in 2006 and held the following positions and worked in the following departments: Program Manager, Inside Sales, Training Manager for Inbound, Outbound, Commercial and Door to Door Sales; Business Operations Manager, Direct Sales Corporate Team; and Senior Operations Analyst.

12.     Plaintiff suffers from a ten-year chronic foot condition due to weak sesamoid bones, which are the bones that support the bottom of the foot.

13.     Plaintiff's foot becomes inflamed and swollen when she stands for too long.

14.     Plaintiff also suffered a hairline fracture in her fifth metatarsal bones which required treatment while she was employed with DISH.

15.     In August 2017, Plaintiff was diagnosed with anxiety and depression.

16.     Plaintiff reported the diagnosis to DISH human resources ("HR"), who advised that she could leave early as needed.

17.     HR copied Mr. Joey Monjure on Plaintiff's email regarding her accommodation request.

18.     At that time, Mr. Monjure was not Plaintiff's supervisor – he was lateral to Plaintiff and working with her.

19.     Under the accommodation, Plaintiff took intermittent Family and Medical Leave Act ("FMLA") leave from August 2017 through January 2018.

20.     In March 2018, Plaintiff's supervisor changed from Ms. Gonzales to Mr. Monjure.

21.     Until then, Ms. Bobian and Mr. Monjure were peers that both reported to Ms. Gonzales.

COMPLAINT AND JURY DEMAND - 3

22.    Upon information and belief, Mr. Monjure had one report at the time, Mr. Andres Garcia.

23.    DISH management told Plaintiff that the new arrangement was due to an increase in responsibility for Ms. Gonzales and a need to offload some of her responsibilities.

24.    Upon information and belief, DISH did not publish the position for promotion publicly or internally.

25.    From April through July 2018, Ms. Bobian was required to attend a DISH training program called "Base Camp," at the direction of her manager, Ms. Gonzales.

26.    Base Camp is a company-wide training intended to teach DISH employees all aspects of the business.

27.    For example, employees spent one day in the call center and one day out in the field with the technicians.

28.    Their participation was evaluated by the other DISH employees with whom they spent the day.

29.    Participants were required to successfully complete all parts of the program to "graduate."

30.    Positive evaluations from the employees at the call center and the technicians in the field were necessary for the successful completion of the program.

31.    When Plaintiff discovered that she was assigned to attend Base Camp, where she would be working in the field, she went to her doctor for a letter describing her chronic foot problem and her accompanying limitations.

32.    Plaintiff provided this letter to the Base Camp trainer, who shared it with Ms. Melissa Gilford, the Base Camp scheduler.

COMPLAINT AND JURY DEMAND - 4

33.     Plaintiff requested a reasonable accommodation in the form of an alternative to working the day in the field with a technician. DISH management informed Plaintiff that nothing could be done as far an accommodation.

34.     Plaintiff also inquired with Ms. Rebecca Magnotti, the director of the department that conducts the training.

35.     Ms. Magnotti echoed DISH management's reply that no accommodations were available for the day in the field and simply that "everyone had to do it."

36.     Plaintiff's chronic foot condition became aggravated during Base Camp after she was required to walk excessive amounts during the training.

37.     Plaintiff wore a walking boot for support and used ice to reduce the swelling.

38.     Despite the pain, swelling, and immobility of Plaintiff's ankle, she completed her day in the field and ultimately "graduated" from Base Camp.

39.     In May 2018, a coworker and friend of Plaintiff, Mr. Troy Hendershott, committed suicide. A short time later, in July 2018, Plaintiff's best friend committed suicide.

40.     The grief from losing two close friends unexpectedly in a short period of time had a significant effect on Plaintiff's ability to manage her depression and anxiety.

41.     In dealing with her physical and mental health issues, Plaintiff exhausted her sick leave, vacation time, and personal leave.

42.     Thus, Plaintiff again applied and was approved for FMLA leave.

43.     On July 31, 2018, Plaintiff attended a "consultation" with Mr. Monjure.

44.     At DISH, a "consultation" is held when management writes up or disciplines an employee.

COMPLAINT AND JURY DEMAND - 5

45.    At this consultation, Mr. Monjure warned Plaintiff about her continued absences and chided her for a failure to input her time by 9:00am.

46.    Upon information and belief, the 9:00am time-entry requirement is not a company-wide policy, but instead, one that Mr. Monjure applied uniquely to Plaintiff.

47.    Eventually, DISH demoted Plaintiff from a manager to an individual contributor due to the alleged absences and time input failures.

48.    The July 31, 2018 consultation write-up was later rescinded because Plaintiff's FMLA leave was approved for that time period.

49.    Nonetheless, Plaintiff's demotion remained unaltered.

50.    On December 20, 2018, Plaintiff had her third-quarter performance review with Mr. Monjure.

51.    Upon information and belief, during DISH performance reviews, managers evaluate their employees on various criteria, including performance metrics specific to their area.

52.    Plaintiff received a "does not meet expectations" rating.

53.    Mr. Monjure told Plaintiff that she was not as productive as her peers because she had been out on FMLA leave.

54.    Mr. Monjure was unreceptive to Plaintiff's voiced concerns that she was being compared to peers whose projects and disability status differed from hers. When Plaintiff protested his method of evaluation, Mr. Monjure insisted there was no other way to evaluate her performance.

55.    Plaintiff pointed out that she did not control release dates on her projects, unlike her peers – yet Mr. Monjure responded that it was Plaintiff's responsibility to persuade those in charge to get her projects launched faster.

COMPLAINT AND JURY DEMAND - 6

56. Mr. Monjure failed to follow company policy concerning appropriate management behavior, keeping human resources abreast about write-ups and demotions, and having human resources representatives present during consultations and performance reviews.

57. Mr. Monjure refused to provide balanced feedback to Plaintiff: He was only able to note the things that Plaintiff did wrong; however, when prodded, he admitted that she knew her project "inside and out."

58. Mr. Monjure refused to provide guidance to Plaintiff on how he would like new projects completed: He would only criticize minor issues and demean her after the fact, causing Plaintiff confusion and exasperation.

59. Plaintiff received several awards during her thirteen-year tenure at DISH and was a conscientious and successful employee until her physical and mental health issues began to impact her.

60. Upon information and belief, Mr. Monjure refused to follow company policy by not providing a human resources representative or other witness during consultations and performance reviews.

61. When Plaintiff insisted on having someone present, Mr. Monjure became angry and told her, "Don't threaten me with Sherri [the HR director], she can't tell me how to do my job."

62. DISH HR specialist, Kate Leyba, also failed to follow company policy by ignoring, and thus, allowing Mr. Monjure to disregard company policy.

63. Plaintiff continually informed Ms. Leyba of her concerns about Mr. Monjure allowing her personnel file to be left open on his desk and holding consultations and

COMPLAINT AND JURY DEMAND - 7

performance reviews without a human resources representative present; however, Ms. Leyba never acted on her concerns.

64. Instead, Ms. Leyba backed Mr. Monjure and made suggestions about how to comply with his particular timekeeping rules, even though it was inconsistent with company policy.

65. Ms. Leyba failed to follow company policy by allowing Mr. Monjure to flout company rules, regulations, and best practices by justifying Mr. Monjure's behavior toward Plaintiff, noting "he treats everyone like that."

66. On December 14, 2018, Plaintiff requested from Ms. Wagner in HR, an accommodation in the form of a transfer to a new position with a different manager due to conflicts with Mr. Monjure and his continued discrimination against her.

67. Plaintiff provided documentation of her mental-health outpatient counseling from December 2018 through the beginning of January 2019 to the DISH Leave Team.

68. On February 7, 2019, Plaintiff had an employee consultation with her new supervisor, Mr. Andres Garcia (Plaintiff was relegated to a position beneath Mr. Garcia, after being senior to him). Mr, Garcia is both a male and, upon information and belief, is significantly younger than Plaintiff.

69. Plaintiff was informed that she was out of FMLA leave and she was not allowed any more time off.

70. Following this consultation, Plaintiff learned of and requested a copy of DISH's Unpaid Leave Guide.

71. Despite more than a year of difficulty with her mental and physical issues forcing her to miss work, no one in human resources thought to share this guide with Plaintiff.

COMPLAINT AND JURY DEMAND - 8

72.     On February 8, 2019, Plaintiff received a letter from the DISH Leaves Team indicating a desire to accommodate her disability under the ADA.

73.     The accommodation was approved, and Plaintiff was allowed additional time off as needed.

74.     Plaintiff accordingly took ADA leave from the end of February 2019 through April 3, 2019.

75.     Yet, on April 2, 2019, DISH terminated Plaintiff. After nearly 15 years of DISH fired Plaintiff just as she sought to return to work after being on leave without pay due to a disability.

76.     The proffered basis for her termination was the elimination of her position as Senior Operations Analyst.

77.     Yet, upon information and belief, several other Senior Operations Analysts positions remain in other groups and were not eliminated.

## FIRST CLAIM FOR RELIEF
### (Disability Discrimination in Violation of the ADA)

78.     Plaintiff reasserts and re-alleges the allegations set forth above.

79.     The ADA prohibits employment discrimination based on disability in the terms, conditions, promotion opportunities, salary and benefits, and classification of employees.

80.     Plaintiff is disabled within the meaning of the ADA in that her impairment substantially limits at least one major life activity.

81.     In addition, Plaintiff was regarded as disabled based on actual or perceived mental and physical impairments, whether or not those impairments limit or are perceived to limit a major life activity.

COMPLAINT AND JURY DEMAND - 9

82.    Plaintiff engaged in protected activity by seeking a reasonable accommodation for her disability.

83.    Plaintiff is a qualified person with a disability who was able to perform the essential functions of her job with reasonable accommodation.

84.    DISH failed to make reasonable accommodations that would have enabled Plaintiff to perform her job and set restrictions that ran counter the set accommodations.

85.    DISH discriminated against Plaintiff by creating a hostile work environment based on disability.

86.    DISH's misconduct was willful and wanton and taken in reckless disregard of Plaintiff's rights.

87.    As a consequence of the DISH's violation of the ADA, Plaintiff has suffered lost wages, emotional distress, and compensatory damages and has incurred attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### (Sex Discrimination in Violation of Title VII)

88.    Plaintiff reasserts and re-alleges the allegations set forth above.

89.    In demoting Plaintiff, affording her less favorable terms and conditions of employment, and discharging or constructive discharging Plaintiff because of her sex/gender, and by creating and tolerating a work environment that was hostile to Plaintiff because of her sex/gender, DISH engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a).

90.    The effect of DISH's actions has been to deprive Plaintiff of equal employment opportunities because of her sex/gender.

91.    The unlawful employment practices complained of above were intentional.

COMPLAINT AND JURY DEMAND - 10

92.    The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

93.    As a consequence of the events and actions described above, Plaintiff has been deprived of equal employment opportunities, suffered lost wages, emotional distress, and compensatory damages, and has incurred attorney fees and costs, and was and is otherwise adversely affected because of her sex/gender.

**FIFTH CLAIM FOR RELIEF**
**(Age Discrimination in Violation of the ADEA)**

94.    Plaintiff reasserts and re-alleges the allegations set forth above.

95.    At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the ADEA, 29 U.S.C. § 621, et seq.

96.    DISH treated Plaintiff less favorably than her similarly situated younger counterparts in the terms and conditions of their employment, as Plaintiff was terminated while other Senior Operations Analysts substantially younger than Plaintiff were not.

97.    At all relevant times, Plaintiff performed the functions of her job competently and was qualified for her position with DISH.

98.    Defendant terminated Plaintiff's employment because of her age. Age was the motivating factor in Defendant's decision to terminate Plaintiff.

99.    Defendant discriminated against Plaintiff on the basis of age and caused her severe injuries, damages, and losses.

100.    Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the ADEA.

101.    As a consequence of DISH's violation of the ADEA, Plaintiff has suffered lost wages, emotional distress, and compensatory damages and has incurred attorney fees and costs.

COMPLAINT AND JURY DEMAND - 11

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against DISH, and award Plaintiff all relief as allowed by law, including, but not limited to, the following:

a.    Declaratory relief and injunctive relief, as appropriate;

b.    Actual economic damages as established at trial;

c.    Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary loses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.    Liquidated damages for all claims as allowed by law;

e.    Pre- and post-judgment interest at the highest lawful rate;

f.    Attorneys' fees and costs; and

g.    Such other and further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated at Denver, Colorado, this 14th day of December 2020.

Respectfully submitted,

*Timothy J. Turner, Esq.*
*Jonathan D. Perrone, Esq.*
WHITCOMB, SELINSKY, P.C.
2000 S. Colorado Boulevard
Tower 1, Suite #9500
Denver, CO 80222
Tel:  303-534-1958
tim@wsmlawpc.com
jon@wsmlawpc.com

*Counsel for Plaintiff Elizabeth Bobian*

COMPLAINT AND JURY DEMAND - 12